J-S11030-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COREY DEAN HARRIS | : | |
| | : | |
| Appellant | : | No. 182 WDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered January 2, 2025
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000488-2023

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                **FILED: June 9, 2026**

Appellant, Corey Dean Harris, appeals from the aggregate judgment of sentence of 376 to 752 years' incarceration, imposed after a jury trial where he was convicted of ninety-four counts of Aggravated Indecent Assault — Complainant Less than 13 Years of Age, 18 Pa.C.S. § 3125(a)(7); ninety-four counts of Indecent Assault — Complainant Less than 13 Years of Age, 18 Pa.C.S. § 3126(a)(7); one count of Unlawful Contact with a Minor, 18 Pa.C.S. § 6318(a)(1)[1]; one count Corruption of Minors, 18 Pa.C.S. § 6301(a)(1)(ii); and one count of Endangering the Welfare of Children, 18 Pa.C.S. §

---

[1] The General Assembly has since amended Section 6318.  As such, the language of Subsection (a)(1) stating "[a]ny of the offenses enumerated in Chapter 31 (relating to sexual offenses)" is now contained in Subsection (a)(1.2).  **See** 18 Pa.C.S. § 6318 (Act of June 27, 2025, P.L. 6, No. 5, § 2, effective Aug. 26, 2025).

4304(a)(1). On appeal, Appellant seeks to challenge the discretionary aspects of his sentence. After careful review, we affirm.

The factual and procedural history of Appellant's case was set forth by Appellant in his brief as follows:

**Factual History**

In May of 2020, a Childline report of suspected abuse (relating to a then 6-year-old female, A.S.), was forwarded to Trooper [Michael] D'Andrea, [of the] Pennsylvania State Police. The report [was] dated from August 2, 2019, and had originally been assigned to the Brockway Borough Police Department. The sum and substance of A.S.'s allegations were that a minor male, C.P.[,] had forced A.S. to touch herself and to allow him to touch her. C.P. allegedly threatened A.S. with a gun if she did not comply. [Trooper] D'Andrea scheduled a forensic interview of A.S. for January 12, 2021.

At that interview, A.S.'[s] testimony did not support her initial allegations against C.P., but she did further state that an un-named grown-up touched her privates, skin to skin, during a family vacation. A.S. reported that the only adults present during this vacation were her grandparents, [M.F.,] and Appellant. The Childline [report] was ultimately shelved due to A.S.'[s] inconsistent statements and a lack of specificity.

Approximately two years later, on June 21, 2022, Chief Troy Bell[] [of the] Brockway Borough Police[] received an anonymous Childline report alleging suspected abuse and neglect of A.F.[2] by Appellant and [M.F]. [Chief] Bell scheduled a forensic interview of A.F. for June 28, 2022, followed by interviews of [M.F.] and Appellant.

[2] Formerly known as A.S., later adopted by [M.F.]

A.F. testified that Appellant and [M.F.] were married but lived in separate residences, [and] that Appellant would come to [M.F.]'s residence (in Brockway Borough, Jefferson County) nightly to share dinner before he assisted [M.F.] with putting several children (including A.F.) to bed. A.F. stated that Appellant would always put her to bed each night, and he would lie beside her. She further alleged that he would then touch her with his fingers

inside her privates. She alleged Appellant did this 9 out of every 10 times he tucked her in. [M.F.] testified that Appellant's bedtime routine with A.F. began in March of 2019 and ended approximately on February 25, 2021, when [M.F.] and Appellant separated.

## Procedural History

A complaint was filed on December 4, 2023, charging Appellant with [the offenses set forth *supra*]. The Commonwealth conservatively based the number of incidents []of Aggravated Indecent Assault and Indecent Assault[] at once per week from May 2019 through and including February 2021. [A] preliminary hearing was held on October 31, 2023, and the case was held for court.

[A j]ury trial commenced on July 11, 2024, and continued into the following day. On the second day of trial, after all testimony had been presented, the [trial] court excused the jury at 11:43 a.m. for lunch. Jurors were directed to return by 12:55 p.m. for closing arguments from counsel. Appellant never returned. At 1:28 p.m., the trial court heard from Appellant's son that [Appellant] had borrowed his son's car to get cigarettes at approximately 12:30 p.m., and that he … had also left his cell phone with the son. Following discussion held outside the presence of the jury, the trial court directed that trial would resume with closing arguments, adding Appellant was free to enter the courtroom and be seated at counsel table in the event he decided to return. Closing arguments concluded in Appellant's absence, and the jury returned guilty verdicts on all counts. Appellant was eventually apprehended in a forested area behind his mother's home on July 17, 2024.

On January 2, 2025, after review of a pre-sentence investigation [("PSI")] report and following [a] hearing to determine whether Appellant is a sexually violent predator [(SVP)], Appellant was [deemed to be an SVP and was] sentenced [to 4 to 8 years' incarceration for each of the ninety-four counts of Aggravated Indecent Assault — Complainant Less than 13 Years of Age, with each count running consecutively to the others. The trial court found all other counts merged for purposes of sentencing.]

> Post-sentence motions were [timely] filed on January 13, 2025, and denied without [a] hearing on January 14, 2025.[2]

Appellant's Brief at 86-90 (unnecessary capitalization, internal citations and one footnote omitted; some formatting modified).

Appellant filed a timely notice of appeal on February 11, 2025. He and the trial court complied with Pa.R.A.P. 1925.[3] Appellant now presents the following issue for our review:

> Whether the trial court's imposition of ninety-four consecutive, top of the guidelines sentences demonstrates a failure to adequately consider the rehabilitative needs of Appellant, the sex offender

---

[2] Appellant's 10-day period to file a timely post-sentence motion ended on January 12, 2025, however, as that was a Sunday, Appellant's post-sentence motion filed January 13, 2025, is timely. **See** Pa.R.J.A. 107(b) ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."); Pa.R.A.P. 107 (effective Jan. 1, 2024) ("In the construction of the Pennsylvania Rules of Appellate Procedure, the principles set forth in Pa.R.J.A. 104 to 115 shall be observed.") (footnote omitted).

[3] The trial court issued its Rule 1925(b) order on February 26, 2025, which ordered Appellant to file his concise statement of matters complained of on appeal "no later than thirty (30) days from receipt of the transcript[.]" Order, 2/26/25, at unpaginated 1; **see also** Order 2/11/25, at unpaginated 1 (ordering transcripts for Appellant's case be produced). Appellant filed his concise statement on August 21, 2025. The trial court subsequently filed its Rule 1925(a) opinion on August 25, 2025. We note it is unclear from the record when the trial court and parties received the SVP/sentencing hearing transcript for this case, because although cited to by the trial court in its Rule 1925(a) opinion and Appellant in his brief, there is no record of the SVP/sentencing hearing transcript being filed until April 10, 2026, following this Court's inquiry about its absence from the certified record. The record further shows that the two-part transcript of Appellant's jury trial was not filed until September 9, 2025, after Appellant filed his concise statement and the trial court filed its Rule 1925(a) opinion. Based on the foregoing, we conclude Appellant's Rule 1925(b) statement was timely.

treatment and supervision he will receive during and following his incarceration, and the non-violent nature of the underlying offenses, therefore resulting in a manifestly excessive sentence?

Appellant's Brief at 85 (unnecessary capitalization omitted).

Appellant's issue implicates the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).... Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003)....
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal, the issue raised by

Appellant was properly preserved in a post-sentencing motion, and he filed a

Rule 2119(f) statement.  In his Rule 2119(f) statement, Appellant alleges a substantial question is raised as follows:

> Appellant contends the trial court's imposition of ninety-four consecutive[,] 4 [to] 8 year sentences is manifestly excessive. The sentence guidelines recommend a 36 [to] 48 month minimum sentence for each count of Aggravated Indecent Assault for a defendant having a prior criminal record score of "2[.]"[]  While each of the trial court's 4[-]year minimum sentences certainly falls within the guideline sentence range, the aggregate total sentence (376 [to] 752 years) is *prima facie* excessive in this instance. Appellant was 47 years old at the time of sentencing, and by any common-sense measure of life expectancy, [he] will serve in the neighborhood of 5 consecutive life sentences before being eligible for parole.  In further support of his contention that the instant sentence is wholly unreasonable, Appellant [argues] … the trial court's sentence does not appear to consider his rehabilitative needs; the sexual offender treatment he would receive both inside the state correctional system and continuing into any period of parole; and that, upon parole, [he] would remain subject to a lifetime registration and continuing treatment regimen and supervision pursuant to [the Sex Offender Registration and Notification Act ("SORNA")] (42 Pa.C.S.[] § 9799.10 *et. seq.*).

Appellant's Brief at 92-93 (footnote omitted).

This Court has held that an appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question."  ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015); ***see also Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (concluding an excessive-sentence claim, plus an assertion the court failed to consider mitigating factors, raises a substantial question).  Finding Appellant has raised a substantial question and satisfied all requirements under ***Evans***, we grant his request for review

of the discretionary aspects of his sentence and consider the merits of his claim. In doing so, we are mindful that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Additionally, in crafting a sentence, courts are directed to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Further, "[t]he general rule in Pennsylvania is that in imposing a sentence the court has discretion to determine whether to make it concurrent with or consecutive to other sentences then being imposed or other sentences previously imposed." *Commonwealth v. Graham*, 661 A.2d 1367, 1373 (Pa. 1995) (citation omitted).

Here, Appellant argues his sentence is "clearly and manifestly unreasonable and an abuse of discretion[,]" as

> [t]he trial court made no mention of Appellant's treatment and rehabilitative needs and does not account for the possibility of future breakthroughs in the successful treatment and rehabilitation of sexual offenders. Further, the sentence does not account for on-going parole and SORNA supervision that would tend to offer protection to the public[,] or indeed, any offender's lessened dangerousness with advanced age. By all accounts, both

the net minimum and maximum sentences are focused only on punishment and retribution, with cursory lip service given to Appellant's age, background[,] and anything contained in the [PSI] report.

Appellant's Brief at 99-100, 102. Appellant contends his case is similar to *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. Super 2011). *See id.* at 100-01. In *Coulverson*, a panel of this Court found Coulverson's sentence unreasonable where "the record reveal[ed] scant consideration of anything other than victim impact and the court's impulse for retribution on the victim's behalf." *Coulverson*, 34 A.3d at 148.

The Commonwealth argues Appellant's case is distinguishable from *Coulverson* because, in that case,

the defendant took accountability for his crimes, expressed remorse, and actively advocated for the sentencing court to take into consideration his cooperation with authorities, his tragic background, dysfunction[,] and poor mental health. In the instant case, [Appellant] gave the sentencing court absolutely nothing in terms of mitigation or to point to the possibility of his rehabilitation. Thus, all of the aspects of [Appellant]'s character which the sentencing court had before it were … *aggravating* factors and not favoring mitigation.

Commonwealth's Brief at 7 (emphasis in original).

We agree with the Commonwealth. Our thorough review of the record reveals the trial court considered all relevant factors of Section 9721(b). Notably, the court had and reviewed a PSI report. Thus, we "presume[] the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa. Super. 2022) (internal quotation marks omitted).

Additionally, prior to sentencing Appellant, the trial court set forth its reasoning as follows:

> So, I've reviewed the [PSI report], consider[ed] your age, your background, [and] your prior record…. Your age is 47, [and] your prior record score is 2.
>
> ***
>
> So, essentially for that period you were [the victim's] stepdad.
>
> Her testimony was that you put her to bed every night and you digitally penetrated her every night. Essentially [an] act that was found to be done 94 times by the jury.
>
> ***
>
> I think sentencing requires us to look at the act. And the act each time was digital penetration … of the child each night you put her to bed.
>
> Which[,] that act certainly can't be mitigated any number of times that it's done to a 6-year-old, to a 7-year-old, an 8-year-old; to anybody under 12. And anybody who at very least was in your care even though you didn't adopt her and she didn't have a biological relationship to you; you were the responsible adult for that child. And that is an act which requires each time a standard[-]range sentence if not an aggravated[-]range sentence. And to do anything less than run each act one consecutive to each other, diminishes each act that the jury found you guilty of.
>
> ***
>
> By the most positive scientist[s] and doctors, that is a life sentence[,] but you deserve a life sentence. You were a person in charge of a young girl, as a parent in a parental capacity, and you sexually violated her each night…. Whether or not that's true[ it happened each night,] or whether or not [it happened] 3 times a week is true, once a week is less than what you did. That's what a jury found.
>
> So, you essentially violated your [obligation of] care and changed the entire [trajectory] of her life. So, for that you earned a sentence because you did those … acts[,] that is in fact going to

be a life sentence. I realize that's what you're getting but I think it's appropriate under the facts.

N.T. Sentencing, 1/2/25, at 35-36, 40-42, 44.[4]

Further, the trial court stated the following in its Rule 1925(a) opinion:

As the sentencing transcript reflects, the [trial c]ourt had in its possession and had reviewed … [Appellant]'s [PSI report]. It was thus presumed to have — and had in fact — considered all information relevant to sentencing. That was not the only information it had, though. Having presided at trial, it had also seen how innocent and naïve … [Appellant]'s victim was and how carefully he had manipulated the fortuitous circumstances of her bedtime routine to make their sexual encounters seem normal, even pleasurable, for her. The [trial c]ourt had further heard him continue to proclaim his innocence at the time of sentencing and insist not only that the Commonwealth's evidence did not support the jury's verdict, but that its members had been repeatedly instructed that they could find him guilty even if there was insufficient evidence to support the charges. Whether it was the result of self-delusion or mental illness, … [Appellant]'s perception of reality was heavily skewed from reality itself, which did not bode well for his rehabilitative potential. Regardless, the [trial c]ourt did indeed take *all* relevant sentencing factors into account and concluded that the sentence it imposed was the appropriate sentence under the circumstances.

Trial Court Opinion, 8/25/25, at 3 (emphasis in original).

Here, it is clear from the record the court considered all relevant sentencing factors and found the aggravating factors of Appellant's case outweighed any mitigating ones. We note that at sentencing, Appellant presented no additional evidence of mitigation beyond the contents of the PSI

---

[4] We note the sentencing transcript is incorrectly dated as July 22, 2024, despite it being clear from the record that Appellant's sentencing hearing took place on January 2, 2025. As such, we have labelled this transcript according to the date the hearing took place.

report, except for a claim of heart problems in his family, N.T. Sentencing at 38, and a general statement from counsel that

> [i]f [Appellant is] able to be paroled, he'll have follow[-]up treatment. The [trial c]ourt has found him to be a[n SVP] so there will be close supervision of him after that. … I'll only state that I feel probation[']s recommendation is too long and does not allow for a chance at rehabilitation which is one of the pillars of our justice system….

*Id.* at 36-37.

Based upon all the evidence before it, the court imposed an aggregate sentence of 376 to 752 years' incarceration. We conclude the record supports the sentencing court's reasoning and its decision conforms to the applicable law. Appellant was sentenced within the standard range for each count of Aggravated Indecent Assault — Complainant Less than 13 Years of Age, and the trial court exercised its discretion in imposing Appellant's sentences consecutively. *See Commonwealth v. Brown*, 249 A.3d 1206, 1216 (Pa. Super. 2021) ("[An a]ppellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences."). The record reflects the court carefully considered all the evidence presented at the sentencing hearing. As such, we discern no abuse of discretion, as Appellant has not established "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will," or "arrived at a manifestly unreasonable decision." *Shugars*, 895 A.2d at 1275.

Judgment of sentence affirmed.

- 11 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/9/2026